JOY *v.* STATE.

Criminal 4446                                    199 S. W. 2d 745

Opinion delivered February 24, 1947.

*Boyd Tackett* and *Thomas M. McCrary,* for appellant.

*Guy E. Williams,* Attorney General, and *Arnold Adams,* Assistant Attorney General, for appellee.

SMITH, J. An indictment against appellant charged him with the offense of possessing beer, for purposes of sale, in a prohibited district. In a response to a motion filed by appellant, the prosecuting attorney filed a bill of particulars which recited that he was unable to state the actual percentage of alcohol by weight of the beer, but that a label on each bottle of the beer recited that it contained not more than five per cent. of alcohol by weight.

A stipulation was entered into by counsel for the state and for appellant reading as follows: "At this time it was stipulated by and between the parties that the beer and ale in question in this case contains not less than one-half of one (1%) per cent. alcohol by weight and not more than five (5%) per cent. alcohol by weight; and that Polk county is known as a 'dry county,' the people of the county having by a majority vote voted against the manufacture and sale of intoxicating liquors under Initiated Act 1 of 1942, the election being held during the month of April, 1946."

Appellant was found guilty upon his trial, and fined $250, and from that judgment is this appeal.

Two questions are presented for decision: First, whether it is a violation of the law to have possession of beer, in dry territory, containing more than one-half of one percent., but less than five per cent. of alcohol by weight, for purposes of sale; and second, if so, whether appellant had such possession.

The beer was found in a building occupied by Post No. 4451 of the Veterans of Foreign Wars, in the city of Mena, in Polk county, which, as stipulated, had become

"dry territory" pursuant to an election held under authority of Initiated Act No. 1 of 1942, appearing at page 998 of the Acts of 1943.

In § 2 of this Act, it is provided that: "Intoxicating liquor is hereby defined to include any beverage containing more than one-half of one per cent. of alcohol by weight," and § 6 of the Act recites that: "It is hereby expressly declared that this Act shall be cumulative to the liquor laws now in force in this state, . . ."

One of the laws on the subject is found in paragraph C of § 14134 of Pope's Digest, which reads as follows: "Any person who shall by himself or his employee, or servant, or agent for himself, or any other person, keep or carry around on his person, or in any vehicle or leave in a place for another to secure, any intoxicating alcoholic liquor with intent to sell the same in violation of this Act, . . . shall be guilty of a misdemeanor . . ." We conclude therefore that it is a violation of the law for one to have beer, or other intoxicating liquors in his possession in dry territory for purpose of sale. The remaining question is whether appellant had possession of the beer in question for purpose of sale. If the beer had been or was being sold, the implication is that it was possessed for that purpose. Was it so possessed?

Pursuant to a legal search warrant, the chief of police and other officers of the city of Mena raided the building occupied by the Post. When the officers entered the building they found only appellant present. He was the Post Commander. The officers found thirty-six cases of assorted beer and ale, and a quantity of beer which had been placed in the ice box to cool. A number of empty bottles were found inside the building, and a number of broken bottles were on the floor and around the tables in the room. There was found also some slot machines having money in them, and appellant proposed, when the officers took charge of the machines, that if the machines were not disturbed, he, appellant, would have the place cleaned up, and that they would not have any more beer there. The officers testified that appellant stated that they were selling the beer and operating the

slot machines for the purpose of raising money for a building fund for the Post, but the Post Commander denied making that statement.

Appellant admitted, however, that he was the Post Commander, and that the beer had been bought in Ft. Smith and hauled by truck to Mena, and had been paid for out of the Post fund which had been started by the sale of an automobile. He further testified that the beer had been bought for the use of the members of the club, although he admitted that one person, not a member, had drunk beer in the clubroom. There was a building fund box located on the bar, where the beer was served, in which box persons served dropped as much as a quarter of a dollar, although he testified that this was not required and was not always done, and that members sometimes drank beer without making a deposit. But it is fairly inferable that members were not expected to sponge on the club.

This witness also testified that the end sought was to augment the building fund, and it is certain, and no testimony was required to prove, that this could not be done by furnishing free beer to the Post members or visitors. Dances had been given to increase the building fund, but these had not been profitable, and the witness candidly admitted that, but for what he called contributions to the building fund, the beer would not have been provided.

It is not intimated that appellant derived or expected any personal gain or emolument from the disposition of the beer, but this was not essential to constitute a sale. If he aided, assisted in making and participated in the sale, he was as much responsible and liable as if the sale had been made for or by him, or for his account; nor may he escape liability because he was not the owner of the beer, as ownership would be and is unimportant if he participated in the sale. *Bird* v. *State,* 175 Ark. 1169, 299 S. W. 40.

The law may not be evaded by resort to subterfuge designed to conceal the character of the transaction, and as no one testified that the beer had been bought to be

given away, the court sitting as a jury was warranted in finding that it had been bought to be sold to augment the building fund, and that the contributions made by depositing money in the box on the bar, placed there for that purpose, was the method by which the sales were made. There could be no higher proof that the beer was possessed for purposes of sale, than the proof of the fact that it was sold, and the judge was warranted in finding that the club headquarters was, within the meaning of the portion of § 14134, Pope's Digest, above quoted, "a place for another to secure" the beer possessed, which could not be sold in Mena without violating the law.

The judgment is therefore affirmed.